UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND

CRIMINAL ACTION NO. 06-03-DLB

UNITED STATES OF AMERICA,                                                    PLAINTIFF,


V.                              **MAGISTRATE JUDGE'S REPORT**
                                **AND RECOMMENDATION**


FAYUS EUGENE GAYHEART, JR.,                                              DEFENDANT.


## I.  INTRODUCTION

This matter has been referred to the undersigned to conduct an evidentiary hearing and issue a Report and Recommendation concerning Defendant's motion to suppress tangible evidence and statements.  [Record No. 24.]  On June 18, 2006, Defendant filed a motion to suppress certain evidence [Record No. 10], and the United States subsequently filed a response in opposition. [Record No. 15.]  An evidentiary hearing regarding said motion was held before the undersigned on December 15, 2006.  [Record No. 38.]  As such, Defendant's motion to suppress [Record No. 10] is now ripe for review.  Having considered the evidence presented and the parties' arguments, it will be recommended that Defendant's motion to suppress [Record No. 10] be denied.

## II.  RELEVANT FACTS AND PROCEDURAL HISTORY

### A.  Relevant Facts

Defendant seeks to suppress tangible evidence recovered from and statements made

during or subsequent to three separate events.  The relevant facts from each of those three events will be set out below.

### 1.  Search of Ms. Brown's Residence at 40 Tad Right Road

On March 25, 2005, Kentucky State Police Troopers Kevin Pelphrey and Michael Murriell separately responded to a radio dispatch in reference to a domestic complaint made by Teresa Brown.  Trooper Pelphrey was the first to respond to Ms. Brown's residence at 40 Tad Right Road, Louisa, Kentucky, with Trooper Murriell responding shortly thereafter. Upon their arrival, Ms. Brown told the troopers that her boyfriend, Fayus Eugene Gayheart, Jr. (hereinafter "Defendant"), had physically assaulted her.  She stated that he had hit her several times, pushed her off of the porch, and then left the residence.  Trooper Pelphrey noticed injuries consistent Ms. Brown's claims.

After advising the troopers that Defendant had a shotgun and marijuana seeds in the house, Ms. Brown consented to a search of her residence.  During the search, Ms. Brown led the troopers to the bedroom closet, where an Iver Johnson, Eastern Arms, model 1929, 16 gauge shotgun was recovered.  The gun was not in any sort of container.  Ms. Brown then led Trooper Murriell to the kitchen and pointed out a bowl containing marijuana seeds, which Trooper Murriell recovered.  The bowl was recovered from the top of a cabinet and did not have a lid.  Based on the evidence recovered, Trooper Murriell obtained a state arrest warrant for Defendant.

### 2.  Traffic Stop on October 26, 2005

On the evening of October 26, 2005, a private citizen placed a call to 911 to report

that a suspicious person had pulled into his driveway and wanted to know how to get to Paintsville and asked odd questions regarding his neighbors.  During that call, the citizen gave the 911 operator a description of the vehicle, an older gray van, as well as its license plate number.  Lawrence County District 3 Constable, Dennis Marcum, who was heading to an unrelated report of animal cruelty, heard the 911 radio dispatch regarding a "suspicious Ford van . . . stopping people and asking odd questions and directions."

Shortly after he received the radio dispatch, Constable Marcum saw a van matching that description headed in the opposite direction toward Louisa, Kentucky.  Constable Marcum turned and followed the van and informed other officers of its location.  While following the van, Constable Marcum learned that the van's license plate numbers matched those from the 911 dispatch and that the van was registered to the Defendant.

After following the vehicle for a short time, the van made a sudden left turn, without signaling, onto the wrong side of the road, facing traffic.  At that point, Constable Marcum initiated a traffic stop by activating his emergency blue lights and pulling in behind the van.  Constable Marcum then exited his vehicle, identified himself as a law enforcement officer, and requested that the Defendant get out of the van.

According to Constable Marcum, Defendant leaned out the window, yelled some obscenities, and drove away, making a U-turn and driving past Constable Marcum.  Constable Marcum pursued Defendant, who stopped periodically to yell obscenities at him.  Once Constable Marcum was able to stop Defendant, he got out of his vehicle and ordered Defendant to get out of his van.

3

Constable Marcum then observed a gun barrel sticking out of the van's window, and Defendant fired a shot at him. The first shot disabled Constable Marcum's vehicle; the second shot hit the driver-side door. Defendant fired a total of four shots. Constable Marcum returned fire as Defendant fled and then requested the assistance of other law enforcement.

Members of the Lawrence County Sheriff's department responded to Constable Marcum's request for assistance and pursued Defendant up Ash Branch Road. When confronted, Defendant fired a shot at the vehicle occupied by Deputy Mark Wheeler. That shot shatter a window of the vehicle and caused glass fragments to strike Deputy Wheeler. Defendant fired more shots at Deputy Wheeler and Sheriff Garrett Roberts. At that point, Deputy Wheeler and Sheriff Roberts were forced to withdraw and wait for reinforcements.

Reinforcements subsequently arrived in the form of other law enforcement officers, including members of the state police. Unsure of Defendant's location, the officers observed Defendant's van for a few hours, watching for any signs of movement. The officers eventually moved in on the van, but Defendant had already fled the scene. A search of the van revealed two 12 gauge shotgun shell casings[1] but no weapon.

### 3.  Search of Ms. Caudill's Residence on October 29, 2005

On October 28, 2005, Sheriff Roberts and Deputy Wheeler became suspicious that Defendant was in the home of Sara Caudill at 9006 Highway 707, Louisa, Kentucky. Sara

---

[1] The shell casings were subsequently matched to a shotgun owned by Defendant and recovered based on statements made by Defendant after his arrest.

Caudill is Defendant's sister.  Driving past the residence, Sheriff Roberts observed a stick in the sliding glass door that was not there when he had driven past earlier in the day.  There were also some lights on inside the house that had not been on before.

Based on the belief that Defendant was inside Ms. Caudill's house, Deputy Wheeler called Trooper Murriell and asked him to bring back-up and meet them at the residence.  The other officers arrived and established a perimeter around the house.  At this point, Trooper Pelphrey called Ms. Caudill to advise her of the situation and what they had found.  Ms. Caudill then consented to a search of her home.[2]

The officers subsequently entered the residence, found Defendant asleep on the couch, and arrested him without incident.  Officers recovered a Davis Industries, model D-22, .22 caliber Derringer pistol and additional rounds of ammunition from the floor near Defendant.  Defendant was advised of his Miranda rights and indicated that he understood those rights.  Defendant was then removed from the house and taken outside.

After his arrest, Defendant made several inculpatory statements.  Defendant advised at least one officer where he had discarded his shotgun and other items from the October 26, 2005 shooting incident.  With the assistance of a search dog, officers later recovered Defendant's Savage 12 gauge shotgun, with a barrel length of less than 16.5 inches.

---

[2] Defendant alleges that Ms. Caudill's consent was involuntary because it was obtained through coercion, duress, and submission to a claim of authority.  Specifically, Defendant claims that Ms. Caudill gave her consent only after the officer threatened harm to her property if she refused to grant permission for the search.  For the reasons set for in Section III(C) of the instant Report and Recommendation, the voluntariness of Ms. Caudill's consent is irrelevant.

Defendant also made statements inculpating himself in the shooting incidents with Constable Marcum and Deputy Wheeler.

### B.  Procedural History

On May 4, 2006, a grand jury returned a ten-count indictment against Defendant. [Record No. 1.]  Specifically, Defendant was charged with four counts of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1), one count of possession of a firearm which was not registered to him in the National Firearms Registration and Transfer Record in violation of 26 U.S.C. § 5861(d), one count of being an unlawful user of a controlled substance in possession of firearms in violation of 18 U.S.C. § 922(g)(3), two counts of possession of a Schedule II controlled substance in violation of 21 U.S.C. § 844(a), and two counts alleging forfeiture of a 16 gauge shotgun, 12 gauge shotgun, 20 gauge shotgun, .22 caliber pistol, and various ammunition pursuant to 18 U.S.C. §§ 922(g)(1), 922(g)(3), and 924(d)(1); 28 U.S.C. § 2461; 26 U.S.C. §§ 5861(d), 5872; and 28 U.S.C. § 2461.  [Id.]

On June 19, 2006, Defendant filed the instant motion to suppress tangible evidence and statements of the Defendant.  [Record No. 10.]  The United States filed a response in opposition on July 3, 2006. [Record No. 15.] Defendant's motion to suppress, however, was held in abeyance in order to determine Defendant's competency to stand trial.  [Record No. 17.]  A competency hearing was set for October 12, 2006.  [Record No. 23.]

On October 5, 2006, Defendant's motion to suppress was referred to the undersigned for an evidentiary hearing and the issuance of a Report and Recommendation.  [Record No.

25.]  Subsequently, Defendant's competency hearing was continued [Record No. 28] and ultimately rescheduled for December 5, 2005 [Record No. 30].  At said hearing, the Court determined that Defendant was competent to stand trial.  [Record No. 32.]  The undersigned then conducted an evidentiary hearing concerning Defendant's motion to suppress on December 15, 2006.  [Record No. 38.]  Pursuant to the referral order from Judge Bunning [Record No. 25], this Report and Recommendation follows.

### III.  ANALYSIS

The Fourth Amendment of the Constitution of the United States provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized."  U.S. Const. amend. IV.

Defendant contends that his Fourth Amendment rights were violated on three separate occasions prior to his arrest.  Specifically, Defendant claims that tangible evidence recovered from and/or statements made during or subsequent to the following searches and seizures must be suppressed: (1) the search of his girlfriend's residence at 40 Tad Right Road; (2) his traffic stop on October 26, 2005; and (3) the search of his sister's house on October 29, 2005. Each of Defendant's claims will be discussed and analyzed below.

#### A.  Search of 40 Tad Right Road

The first issue the Court must address is whether the warrantless search of Teresa Brown's residence at 40 Tad Right Road was permissible.  Defendant contends that although

7

Ms. Brown may have consented to have her home searched, her consent did not extend to any closed containers belonging to Defendant.  Defendant argues that the items recovered during that search, namely a 16 gauge shotgun and some marijuana seeds, must be suppressed.

The search of a premises without a warrant is presumed to be unreasonable absent the application of a well-defined exception to the warrant requirement.  United States v. McClain, 444 F.3d 556, 561 (6th Cir. 2005), cert. denied, 127 S. Ct. 580 (2006).  However, despite the general presumption of unreasonableness, the prohibition does not apply where voluntary consent to search the premises has been given.  United States v. Ivy, 165 F.3d 397, 401 (6th Cir. 1998).  "Valid consent may be given not only by the defendant but also by a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected."  United States v. Morgan, 435 F.3d 660, 663 (6th Cir. 2006) (citing United States v. Matlock, 415 U.S. 164, 171 (1974)) (internal quotation marks omitted).

In this case, Defendant does not argue that Ms. Brown's consent to search her home was somehow invalid.  Instead, Defendant's motion focuses on the stated "belief" that the marijuana seeds and shotgun discovered during the search were located in a closed container within the house.  [See Record No. 10 at 4.]  The evidence and testimony presented at the evidentiary hearing, however, conclusively demonstrate otherwise.  There is uncontroverted testimony that the shotgun was found in the bedroom closet.  [See Record No. 40, Evid. Hr'g Tr. (hereinafter "Tr.") 11, 33, 42, 48.]  Both officers involved in that search specifically

8

stated that the gun was not found in any type of closed or locked container.  [Id.]

Similarly, the testimony given at the evidentiary hearing further demonstrated that the marijuana seeds were not recovered from a closed container of any sort.  According to Officer Murriell, Ms. Brown led him to the kitchen area and showed him where the marijuana seeds could be found.  [Tr. 43.] Officer Murriell then retrieved an uncovered bowl containing marijuana seeds from the top of a cabinet.  [Tr. 48-49.]

The evidence and testimony presented at the evidentiary hearing disprove the factual basis of the claims Defendant makes in his motion to suppress.  As noted above, Defendant does not contend that the search of Ms. Brown's residence at 40 Tad Right Road was invalid or improper.  Defendant only argues that Ms. Brown's consent to the search was insufficient to permit the search of any closed containers belonging to Defendant.  While Defendant is correct that consent to search a home does not necessarily equate to consent to search all of the containers within a home, the evidence in this case compels the conclusion that that distinction is inapplicable here.

Defendant did not submit any evidence demonstrating that the items recovered from the search of Ms. Brown's home were actually found in any type of closed or locked container, and no testimony supported that assertion.  In fact, the evidence proved the opposite: the shotgun was recovered from the bedroom closet and the marijuana seeds were found in an uncovered bowl on top of a cabinet in the kitchen.  Thus, while a legally correct statement of law, the distinction Defendant seeks to make is factually incorrect based on the evidence presented in this case.

Here, Ms. Brown's authority to consent to the search of her residence is well-established and unchallenged by Defendant. The evidence and testimony establish that the items recovered were not found, as Defendant argues, in any type of closed containers. Therefore, because Ms. Brown's consent was valid, the items recovered from the search of her home should not be suppressed. Accordingly, as it relates to the 16 gauge shotgun and the marijuana seeds recovered from Ms. Brown's home at 40 Tad Right Road, Defendant's motion to suppress [Record No. 10] should be denied.

### B. Traffic Stop on October 26, 2005

The next issue before the Court is whether Constable Marcum's initial traffic stop of Defendant on October 26, 2005, was proper. Defendant claims that Constable Marcum lacked sufficient justification to initiate a traffic stop when he pulled Defendant over on October 26, 2005. Defendant argues that because the initial traffic stop was improper, all evidence recovered subsequent to that stop as well as any statements that Defendant may have made must be suppressed.

The law is clear that the "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons'" within the meaning of the Fourth Amendment. See, e.g., Whren v. United States, 517 U.S. 806, 809 (1996). If a police officer has probable cause to believe a civil traffic violation has occurred, however, he may lawfully stop the vehicle. See id. at 814, 819; see also United States v. Townsend, 305 F.3d 537, 541 (6th Cir. 2003). Like other alleged Fourth Amendment violations, determining whether a traffic stop is an unreasonable

10

seizure in violation of the Fourth Amendment requires an objective evaluation of the officer's conduct in light of the surrounding circumstances known to the officer.  United States v. Ferguson, 8 F.3d 385, 388 (6th Cir. 1993) (en banc), cert. denied, 513 U.S. 828 (1994).

Here, Defendant asserts that Constable Marcum could not have had a reasonable suspicion to stop the Defendant based solely on the 911 dispatch.  While it is questionable if that 911 call alone could have sufficiently established that criminal activity was afoot, that question need not be answered by the Court.  This is because Constable Marcum never initiated a brief investigatory stop based solely on the 911 dispatch.  Instead, Constable Marcum, after receiving the dispatch, merely followed Defendant.  It was not until Defendant made an erratic left turn without signaling and stopped on the opposite side of the road facing traffic that Constable Marcum initiated a traffic stop.  Defendant's erratic maneuver and failure to signal a turn supplied probable cause for Constable Marcum to believe that a traffic violation had occurred or was occurring.

With respect to traffic stops, the Sixth Circuit has held that "so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resultant stop is not unlawful and does not violate the Fourth Amendment."  United States v. Bradshaw, 102 F.3d 204, 210-11 (6th Cir. 1996) (citing Ferguson, 8 F.3d at 391 (6th Cir. 1993)).  Moreover, "[t]he stop is reasonable if there was probable cause, and it is irrelevant what else the officer knew or suspected about the traffic violator at the time of the stop." United States v. Odoms, 2006 WL 3484025, *9 (E.D. Tenn. Nov. 30, 2006).

In this case, Constable Marcum observed Defendant commit multiple moving

violations [Tr. 54, 55, 63], including making a left turn without signaling[3] [Tr. 63].  In fact, Constable Marcum testified on cross-examination that Defendant's moving violations were the basis for the initial traffic stop. [Tr. 63-64.]  Because Defendant's traffic violations created probable cause for Constable Marcum to initiate a traffic stop, the resulting stop is not unlawful and does not violate the Fourth Amendment.  Consequently, all evidence derived from and subsequent to that stop on October 26, 2005, should not be suppressed.  Accordingly, as it relates to the evidence recovered from Defendant's van and the surrounding area as well as any statements made by Defendant during or subsequent to that initial stop, Defendant's motion to suppress [Record No. 10] should be denied.

C.  Search of Ms. Caudill's residence on October 29, 2005

The final issue for the Court to address is whether the warrantless search of Ms. Caudill's residence was permissible.  Defendant argues that the search of his sister's house was unlawful because her consent was the result of coercion or duress.  Thus, Defendant contends that all of the evidence obtained during and subsequent to that search must be suppressed.

In this case, Defendant lacks standing to assert the Fourth Amendment rights of his sister.  The Supreme Court has held that Fourth Amendment interests are personal.  See Minnesota v. Carter, 525 U.S. 83, 88 (1998).  Defendant, therefore, can assert only his own Fourth Amendment rights, and not the Fourth Amendment rights of Sara Caudill, his sister

---

[3] See K.R.S. § 189.380 (violation to make a turn without signaling).

and the third-party homeowner in the instant case, whose home police entered to effectuate the arrest of Defendant. <u>See</u> <u>United States v. Pruitt</u>, 458 F.3d 477, 485 (6th Cir. 2006). Accordingly, because Defendant lacks standing to assert the Fourth Amendment rights of Ms. Caudill, the voluntariness of her consent is irrelevant.

In <u>United States v. Buckner</u>, 717 F.2d 297 (6th Cir. 1983), the Sixth Circuit decided a case factually similar to the instant one. That case involved the search of the premises of a third party which resulted in the arrest of the defendant and the seizure of evidence which was used against him. The Sixth Circuit concluded that the defendant lacked standing to challenge the search because he did not reside in the home. That panel also found, however, that even were the defendant to possess Fourth Amendment standing, the rule of <u>Payton</u> would apply. <u>Id.</u> at 300 (citing <u>Payton v. New York</u>, 445 U.S. 573, (1980) (holding that a valid arrest warrant for the suspect, based on probable cause, would permit the police to enter a suspect's home to effectuate an arrest)). Because the officers possessed a valid arrest warrant, the defendant's Fourth Amendment interests were fully protected; and, "[i]t would be illogical to afford defendant any greater protection in the home of a third party than he was entitled to in his own home." <u>Id.</u>; <u>see also</u> <u>Pruitt</u>, 458 F.3d at 482 (relying on <u>Buckner</u>).

Here, Defendant, like the defendant in <u>Buckner</u>, lacks standing to challenge the search of his sister's home because he did not reside there. Moreover, even if Defendant had Fourth Amendment standing to challenge the search of his sister's house, Defendant's Fourth Amendment rights were fully protected because the police had a valid arrest warrant for him. It is beyond question that had Defendant been in his own home, the police could have entered

13

his home based on the warrant for his arrest and a reason to believe that he was inside.  See Payton, 445 U.S. at 603 ("an arrest warrant based on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within").  As with the defendants in Buckner and Pruitt, it is similarly illogical to extend to Defendant greater rights of privacy in the home of his sister than he would have been afforded in his own residence.  Therefore, as it relates to the .22 caliber gun and ammunition recovered during the search of Ms. Caudill's residence as well as any statements made by Defendant subsequent to his arrest, Defendant's motion to suppress [Record No. 10] should be denied.

## IV.  CONCLUSION

Accordingly, and for the reasons set forth above, the undersigned hereby recommends that Defendant's motion to suppress tangible evidence and statements [Record No. 10] be denied.

Specific objections to this Report and Recommendation must be filed within ten (10) days from the date of service thereof or further appeal is waived.  United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Bituminous Cas. Corp. v. Combs Contracting Inc., 236 F. Supp. 2d 737, 749-750 (E.D. Ky. 2002).  General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal.  Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995).  A party may file a response to another party's objections within ten (10) days after being served with a copy thereof.  28 U.S.C. § 636(b)(1)(C); Rule 72(b), Fed. R. Civ. P.

14

Signed December 22, 2006.



Signed By:

*Edward B. Atkins*

United States Magistrate Judge

Date of Entry and Service: