**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND**

**CRIMINAL ACTION NO. 06-3-DLB**

**UNITED STATES OF AMERICA**                                      **PLAINTIFF**

**VS.**                          **ORDER ADOPTING
REPORT AND RECOMMENDATION**

**FAYUS EUGENE GAYHEART, JR.**                          **DEFENDANT**

*******************************

      This matter is before the Court upon the Magistrate Judge's Report and Recommendation (R&R) (Doc. # 41), wherein he recommends that the Court deny Defendant's Motion to Suppress Evidence. Defendant has filed objections to the R&R (Doc. # 43). The government having not responded to the objections, and the time for doing so having now expired, the R&R and the objections thereto, which are reviewed *de novo*, are now ripe for the Court's review.

      On December 15, 2006, Magistrate Judge Atkins conducted an evidentiary hearing which several witnesses testified, including Defendant's sister. Defendant did not testify during the hearing. On December 22, 2006, Magistrate Judge Atkins issued his R&R wherein he recommends that the Court deny Defendant's motion. In his objections, which have been reviewed *de novo*, Defendant makes several arguments. First, Defendant argues that the R&R is clearly erroneous because it gave undue credence to the testimony of KSP Troopers Pelphrey and Murriell in adjudicating the search at 40 Tad Right Road.

1

Second, Defendant challenges the Magistrate Judge's conclusion that the October 26, 2005 traffic stop was supported by the requisite reasonable suspicion. Defendant also argues that the traffic stop was pretextual. Third, Defendant asserts that his sister's consent to search her residence on October 29, 2005 was neither knowing nor voluntary. Finally, Defendant argues that because any statements made by him were without the benefit of having been advised of his Miranda warnings, those statements should be suppressed.

In his R&R, Magistrate Judge Atkins makes several recommendations. First, he concludes that the search of 40 Tad Right Road was a valid search based upon the oral consent of Teresa Brown, who resided at that address. The Court agrees. Although Defendant argues that Ms. Brown did not have the ability to consent to search locked and/or closed containers, there is no evidence in the record that the gun or the marijuana was contained in locked recipticals. As a co-habitant of 40 Tad Right Road, Ms. Brown had the actual authority to consent to the search of the residence. Moreover, the officers did not exceed the scope of her valid consent by searching the bedroom closet and top of the kitchen cabinet where the firearm and marijuana seeds were discovered. Any purported inconsistencies in the testimonies of Troopers Pelphrey and Murriell regarding who removed the weapon and their purpose for responding to the residence are simply not relevant to the validity of Ms. Brown's consent.

Second, Magistrate Judge Atkins concludes that Constable Marcum had reasonable suspicion to effectuate a traffic stop of Defendant's van on October 26, 2005. The Court agrees. Based on the uncontroverted testimony of Constable Dennis Marcum, the October 26, 2005 traffic stop of Defendant's Ford van was supported by reasonable suspicion.

Although Defendant asserts that Marcum initiated the traffic stop based on an unsubstantiated 911 dispatch call, the uncontested facts as found by Magistrate Judge Atkins reveal otherwise. While it is true that Marcum followed the van after receiving the radio dispatch, no traffic stop was initiated based solely on that information. Rather, it was not until Defendant made an abrupt left turn without signaling onto the wrong side of the road, facing traffic, which precipitated the traffic stop. That traffic violation, a violation of K.R.S. § 189.380, provided Marcum with a basis to effectuate a traffic stop. The fact that Marcum may have had knowledge of a suspicious Ford van is irrelevant.

With respect to traffic stops, the Sixth Circuit has stated:

> [S]o long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment.

*United States v. Bradshaw*, 102 F.3d 204, 210-211 (6th Cir. 1996) (citing *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993) (en banc). The probable cause determination turns on "what the officer knew at the time he made the stop." *Ferguson*, 8 F.3d at 391 (emphasis in original). *See also Whren v. United States*, 116 S.Ct. 1769, 1774-75 (1996) (holding that the constitutional reasonableness of traffic stops does not depend on the actual motivation of the officer involved, so long as the officer had probable cause to believe that a traffic violation had occurred). In view of *Whren*, Marcum's actual motivation is irrelevant. Defendant's traffic violation provided Marcum with a reasonable basis for the stop.

Additionally and perhaps more significantly, no search was conducted at that time. In fact, after Marcum pulled Defendant's van over to conduct his traffic stop, Defendant yelled obscenities at him and drove away, making a U-turn in an attempt to flee. These

3

additional facts gave Marcum even more reasonable suspicion to effectuate the stop and investigate. As the Supreme Court explained in *Illinois v. Wardlow,* 528 U.S. 119 (2000), "evasive behavior is a pertinent factor in determining reasonable suspicion" and "[h]eadlong flight ... is the consummate act of evasion." *Id.* at 124; *see also Watkins v. City of Southfield,* 221 F.3d 883, 889 n. 3 (6th Cir. 2000) (noting that the development of reasonable suspicion may take into account all events occurring prior to the physical apprehension of a suspect who flees).

Marcum eventually was able to stop Defendant. As Marcum was approaching Defendant's van, he ordered Defendant to exit the van. Defendant did not comply. Rather, he began shooting at Marcum, who returned fire as Defendant drove away in his van. Other officers thereafter joined in the pursuit and Defendant continued to shoot at them as well. At some point, and unbeknownst to the pursuing officers, Defendant abandoned his van after the shootout with police. A subsequent search of the van revealed two shell casings which were eventually matched to a shotgun owned by Defendant and recovered based on Defendant's post-arrest admissions.

In addition to the grounds stated by Magistrate Judge Atkins in his R&R, the search of the van and discovery of the shotgun shell casings is upheld on the alternative ground that by fleeing the scene, Defendant abandoned any expectation of privacy he may have had in the van. *See United States v. Foster*, 65 Fed.Appx. 41, 46 (6th Cir. 2003). Moreover, even if Constable Marcum did not possess reasonable suspicion for his initial traffic stop, which the Court found that he did, because the search and seizure of the van did not occur until after Defendant had fled in his van, fired shots at pursuing officers, and eventually fled the scene on foot, there was no violation of Defendant's Fourth Amendment

rights as a result of the October 26, 2005 search of his abandoned van.

Third, Magistrate Judge Atkins recommends that the search of Defendant's sister's residence on October 29, 2005 be upheld because Defendant lacks standing to assert the Fourth Amendment rights of his sister. The Court agrees.

Fourth Amendment rights "are personal rights that, like some other constitutional rights, may not be vicariously asserted." *United States v. Hopper,* 58 Fed.Appx. 619, 624 (6th Cir. 2003). The Supreme Court has stated that "[s]ubsequent attempts to vicariously assert violations of the Fourth Amendment rights of others have been repeatedly rejected by this Court." *United States v. Salvucci*, 448 U.S. 83, 86 (1980); *see also Rawlings v. Kentucky,* 448 U.S. 98 (1980). In this case, the evidence Defendant seeks to suppress came from his sister's residence. That fact is undisputed. Therefore, Defendant cannot vicariously challenge the validity of his sister's consent to permit law enforcement officers to enter her residence.

Although not addressed by Magistrate Judge Atkins in his R&R, the Court concludes that despite Defendant's argument to the contrary, Ms. Caudill's consent was knowingly and voluntary. While she did express some concern with potential property damage to her residence if police had to wait to obtain a search warrant, that fact does not convert an otherwise valid consent to an unlawful one. Similarly, the fact that the officers indicated that they would attempt to obtain a search warrant in the absence of consent, does not compel the conclusion that Ms. Caudill's consent was invalid. In view of the Court's standing and consent rulings, no further discussion regarding the search of Ms. Caudill's residence is warranted. Nevertheless, in upholding the search of Ms. Caudill's residence on October 29, 2005, the Court does not adopt Magistrate Judge Atkins' alternative ground

for upholding that search, to wit, the existence of the arrest warrant for Defendant provided an independent basis for entry into Ms. Caudill's residence.

In his final objection to the R&R, Defendant argues that because the government did not prove who advised him of his Miranda warnings after he was arrested, any statements he provided must be suppressed. Although Defendant did not raise the lack of Miranda warnings in his motion to suppress[1], and accordingly, this issue was not addressed in Magistrate Judge Atkins' R&R, based on the testimony at the suppression hearing, Defendant now seeks to have any post-arrest statements suppressed on Miranda grounds. The Court disagrees.

*Miranda* warnings are only required prior to the police conducting a custodial interrogation, which the Supreme Court has defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona,* 384 U.S. 436, 444 (1966). In determining whether a defendant is in custody for purposes of *Miranda,* a court "must examine 'all of the circumstances surrounding the interrogation' and determine 'how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action.' " *Yarborough v. Alvarado,* 541 U.S. 652 (2004)

Applying this standard, Defendant's October 26, 2005 statement: "fuck you, leave me alone" to Constable Marcum is not subject to suppression because Defendant was not in custody at the time he made that statement.

---

[1] Defendant's attack on any pre or post arrest statements he may have given was based on a fruit-of-the-poisonous-tree argument, rather than the failure to provide adequate Miranda warnings.

6

Based on Defendant's October 29, 2005 arrest at his sister's residence, Defendant was in custody when he made additional statements after his arrest on the state warrant. It is well established that incriminating statements elicited from suspects in custody cannot be admitted at trial unless the suspect was first advised of his *Miranda* rights. *United States v. Salvo,* 133 F.3d 943, 948 (6th Cir. 1998) (citing *Stansbury v. California,* 511 U.S. 318, 322 (1994)). A defendant may waive his *Miranda* rights, but the waiver must be voluntary, knowing, and intelligent, based on the totality of the circumstances. *Moran v. Burbine,* 475 U.S. 412, 421 (1986). The government has the burden of proving by a preponderance of the evidence that the waiver was voluntary; however, in order for the waiver to be involuntary, there must be "an element of police coercion." *Seymour v. Walker,* 224 F.3d 542, 554 (6th Cir. 2000) (citing *Colorado v. Connelly,* 479 U.S. 157, 169-71 (1986)).

In this case, Defendant argues that because the officers who testified at the hearing cannot state with specificity who advised him of his *Miranda* rights, the government has not carried its burden of proving a knowing waiver of *Miranda* rights. The Court disagrees. In deciding this issue, the Court relies on the following testimony elicited from the following witnesses who testified during the hearing:

Murriell

> Q. And, at that point, was he advised of his Miranda rights?
> A. Yes, sir, he was by someone.
>
> Q. Did you hear him being read the Miranda rights?
> A. Yes, sir.
>
> Q. Did the defendant in your opinion seem to understand that was going on?
> A. Yes, sir, he did.

7

(Doc. # 40, Hearing TR, Murriell at 45).

    Q.    You testified that you heard Mr. Gayheart receive his Miranda rights, is that correct?
    A.    Yes, ma'am.

    Q.    You personally did not give him the Miranda rights, is that correct?
    A.    No, ma'am, I didn't.

    Q.    And you do not remember who gave them to him?
    A.    No, ma'am.

(Doc. # 40, Hearing TR, Murriell at 50).

### Wheeler

    Q.    Did you hear him being read his Miranda rights?
    A.    Yes, sir. Best of my memory Sheriff Roberts was the one that read him the Miranda rights.

    Q.    And when he was Mirandized, did he indicate that he understood those Miranda rights?
    A.    Yes, sir.

(Doc. # 40, Hearing TR, Wheeler at 77-78).

    Q.    You testified that you did not personally read my client his Miranda rights?
    A.    That's correct. I overheard them being read, but I did not.

    Q.    And you believe it was Sheriff Roberts who read him his Miranda rights, is that correct?
    A.    That's correct.

(Doc. # 40, Hearing TR, Wheeler at 84).

### Roberts

    Q.    And was he read his Miranda rights?
    A.    Yes sir, he was.

    Q.    Did you read him his rights?
    A.    I don't recall. I don't know if myself or one of the other units there.

    Q.    You are certain he was Mirandized?
    A.    Yes, sir.

>Q. And did the defendant indicate he understood those rights?
>A. Yes, sir, I believe he did.

(Doc. # 40, Hearing TR, Roberts at 95-96).

>Q. You also testified that you believe that my client was read his Miranda rights?
>A. Yes, ma'am.
>
>Q. And you said that you don't remember it being you who read him the Miranda rights, is that correct?
>A. That's correct.
>
>Q. But you think someone did?
>A. Yes, ma'am.

(Doc. # 40, Hearing TR, Roberts at 101).

In response to this testimony, Defendant did not testify at the hearing. More specifically, there is no evidence from the Defendant that he did not receive his Miranda warnings after his arrest. Thus, the evidence that he was advised of his Miranda rights by one of the officers on the scene is undisputed.

Based on the testimony of the officers, the Court finds as a matter of fact that Defendant was advised of his Miranda rights after he was arrested on October 29, 2005, in all likelihood by Sheriff Roberts, and that he understood those rights. All three officers recall Defendant being advised of his Miranda rights and each testified he appeared to understand those rights. Therefore, the Court concludes that the government has sustained its burden of proving by a preponderance of the evidence that Defendant's Miranda waiver was voluntary. In reaching this conclusion, the Court finds there is no evidence of police coercion which would cause the waiver to be involuntary.

Accordingly, Defendant's Miranda argument is rejected and his post-arrest statements are deemed admissible.

Upon consideration of the R&R and the objections thereto *de novo*, the Court concludes that Magistrate Judge Atkins' factual findings are clearly supported by the record. Additionally, any objections to Magistrate Judge Atkins' credibility assessments are misplaced and will be overruled. Unless otherwise set forth in this Order, and as supplemented by this Order, the Court agrees with Magistrate Judge Atkins' recommended factual findings and conclusions of law.

Accordingly, **IT IS ORDERED AND ADJUDGED** as follows:

(1) Defendant's Objections to the Magistrate Judge's Report and Recommendation (Doc. # 43) be, and are, hereby **overruled**;

(2) The Factual Findings of the Magistrate Judge in his Report and Recommendation be, and are, hereby **adopted** as the Factual Findings of the Court;

(3) Unless otherwise set forth in this Order, the Magistrate Judge's Conclusions of Law be, and are hereby **adopted** as the Court's Conclusion of Law;

(4) Defendant's Motion to Suppress Evidence (Doc. # 10) be, and is hereby **denied**;

(5) The time period from June 18, 2006, through the date of this Order, totaling 241 days, is deemed **excludable time** pursuant to Title 18, United States Code § 3161(h)(1)(F);

(6) The trial of this matter will remain as scheduled for **March 12, 2007 at 9:30 a..m.** in Ashland, with the attorneys present at 9:00 a.m. Counsel shall keep the Court apprised of any changes.

This 14th day of February, 2007.



Signed By:
*David L. Bunning*
United States District Judge

G:\DATA\ORDERS\AshCrim\06-3-Order-Adopting-R&R.wpd